## UNITED STATES v. RUHL.

### No. 4915 Criminal.

District Court, D. Wyoming.
May 23, 1944.

642

Carl L. Sackett, U. S. Atty., and John C. Pickett, Asst. U. S. Atty., both of Cheyenne, Wyo., for the Government.

Norman B. Gray, of Cheyenne, Wyo., for defendant.

KENNEDY, District Judge.

Until a comparatively recent date it was thought that the matter of the admission of confessions in criminal cases was quite generally understood. The underlying basis forming the duty of a court in the trial of a criminal case was to determine whether or not a confession was voluntary or involuntary. The ultimate fact in regard to that conclusion was to be determined from all the circumstances of the individual case. If it should be found that a confession had been secured through fear, threats or punishment, physical or mental, or through any promise of reward, or the absence of the statement to a defendant that he was not compelled to make a statement unless of his own volition, then said confession would be adjudged inadmissible as evidence, but if, on the other hand, the confession appeared to have been given voluntarily by the defendant, it became admissible.

Only recently have certain decisions of the Supreme Court of the United States seemed to disturb this well recognized rule. The first of these recent cases is the case of McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. Here, Mr. Justice Frankfurter, 318 U.S. at page 341, 63 S.Ct. at page 613, 87 L.Ed. 819, made the following observation—and I want to repeat, this is the case which threw the courts into confusion, as I believe—for on page 341 of 318 U.S., 63 S.Ct. on page 613, 87 L.Ed. 819, the Court says, in the opinion:

"The principles governing the admissibility of evidence in federal criminal trials have not been restricted, therefore, to those derived solely from the Constitution. In the exercise of its supervisory authority over the administration of criminal justice in the federal courts, see Nardone v. United States, 308 U.S. 338, 341, 342, 60 S.Ct. 266, 267, 268, 84 L.Ed. 307, this Court has, from the very beginning of its history, formulated rules of evidence to be applied in federal criminal prosecutions." Citing other authorities. "And in formulating such rules of evidence for federal criminal trials the Court has been guided by considerations of justice not limited to the strict canons of evidentiary relevance.

"Quite apart from the Constitution, therefore, we are constrained to hold that the evidence elicited from the petitioners in the circumstances disclosed here must be excluded. For in their treatment of the petitioners the arresting officers assumed functions which Congress has explicitly denied them. They subjected the accused to the pressure of a procedure which is wholly incompatible with the vital but very restricted duties of the investigating and arresting officers of the Government and which tends to undermine the integrity of the criminal proceeding. Congress has explicitly commanded that 'It shall be the duty of the marshal, his deputy, or other officer, who may arrest a person charged with any crime or offense, to take the defendant before the nearest United States commissioner or the nearest judicial officer having jurisdiction under existing laws for a hearing, commitment, or taking bail for trial * * *'." Citing the Code, 18 U.S. C.A. § 595.

The opinion then makes reference to the Act of June 18, 1934, 5 U.S.C.A. § 300a,

which requires that "the person arrested shall be immediately taken before a committing officer," and also makes reference to the Act of Congress of March 1, 1879, 18 U.S.C.A. § 593, which provides that when arrests are made of persons in the act of operating an illicit distillery, the arrested persons shall be taken forthwith before some judicial officer residing in the county where the arrests were made, or if none, in the county nearest to the place of arrest. The opinion then goes on:

"Similar legislation, requiring that arrested persons be promptly taken before a committing authority, appears on the statute books of nearly all the states."

Now, this seems very strong language, but it was modified to some degree by a later statement, 318 U.S. on page 346, 63 S.Ct. on page 615, 87 L.Ed. 819, from which I quote:

"The mere fact that a confession was made while in the custody of the police does not render it inadmissible." Citing cases. "But where in the course of a criminal trial in the federal courts it appears that evidence has been obtained in such violation of legal rights as this case discloses, it is the duty of the trial court to entertain a motion for the exclusion of such evidence and to hold a hearing, as was done here, to determine whether such motion should be granted or denied."

And that is what we are doing here.

Now, the first statement which I have read led the lower courts to formulate a policy which would seem to be in harmony with that decision in the McNabb case. It is needless to say that this decision left the lower courts in considerable doubt concerning the admission of confessions. Cases were ruled by Courts of Appeals to the effect that this decision made all confessions inadmissible where the arrested defendant had not been taken immediately before a committing magistrate. In fact, it is clear that this was the understanding of the official reporter of the Court itself in his statement of the holding of the Court in the 5th syllabus, which reads:

"5. The circumstances (detailed in the opinion) under which federal officers obtained incriminating statements from the defendants in this case, together with the flagrant disregard of Acts of Congress requiring that accused persons arrested by federal officers be taken before a United States Commissioner or other judicial officer, rendered the evidence thus obtained inadmissible in a criminal prosecution in a federal court, and convictions resting upon such evidence must be set aside."

If we were operating under the decision in that case, I am quite certain that it might be the Court's duty to exclude the confession in this case.

■ Next before the Supreme Court came the case of United States v. Mitchell, 64 S.Ct. 896, 897, where we can see at least the theory of the McNabb case was exceedingly narrowed to the extent that the particular features heretofore adverted to were eliminated in that opinion, when the Court said:

"Inexcusable detention for the purpose of illegally extracting evidence from an accused, and the successful extraction of such inculpatory statements by continuous questioning for many hours under psychological pressure, were the decisive features in the McNabb case which led us to rule that a conviction on such evidence could not stand."

■ Then the Court says, quoting from a later portion of the opinion:

"But the circumstances of legality attending the making of these oral statements are nullified, it is suggested, by what followed. For not until eight days after the statements were made was Mitchell arraigned before a committing magistrate. Undoubtedly his detention during this period was illegal. The police explanation of this illegality is that Mitchell was kept in such custody without protest through a desire to aid the police in clearing up thirty housebreakings, the booty from which was found in his home. Illegality is illegality, and officers of the law should deem themselves special guardians of the law. But in any event, the illegality of Mitchell's detention does not retroactively change the circumstances under which he made the disclosures. These we have seen were not elicited through illegality. Their admission, therefore, would not be use by the Government of the fruits of wrongdoing by its officers. Being relevant, they could be excluded only as a punitive measure against unrelated wrongdoing by the police. Our duty in shaping rules of evidence relates to the propriety of admitting evidence. This power is not to be used as an indirect mode of disciplining misconduct."

■ So it would appear from a reading of the opinion in the Mitchell case that the mere fact that the arresting officers had not taken the defendant before a committing magistrate promptly or immediately, as enjoined by the law, does not render the confession irrelevant or inadmissible. The rule which was supposedly laid down in the McNabb case was very much restricted.

Now, the next case was the so-called Ashcraft case, Ashcraft v. State of Tennessee, 64 S.Ct. 921, 926, and there the matter that was complained of principally, and upon which the Supreme Court ruled, concerning the confession, was stated as follows:

"For thirty-six hours after Ashcraft's seizure during which period he was held incommunicado, without sleep or rest, relays of officers, experienced investigators, and highly trained lawyers questioned him without respite. From the beginning of the questioning at seven o'clock on Saturday evening until six o'clock on Monday morning Ashcraft denied that he had anything to do with the murder of his wife. And at a hearing before a magistrate about 8:30 Monday morning Ashcraft pleaded not guilty to the charge of murder which the officers had sought to make him confess during the previous thirty-six hours.

"We think a situation such as that here shown by uncontradicted evidence is so inherently coercive that its very existence is irreconcilable with the possession of mental freedom by a lone suspect against whom its full coercive force is brought to bear. It is inconceivable that any court of justice in the land, conducted as our courts are, open to the public, would permit prosecutors serving in relays to keep a defendant witness under continuous cross examination for thirty-six hours without rest or sleep in an effort to extract a 'voluntary' confession. Nor can we, consistently with Constitutional due process of law, hold voluntary a confession where prosecutors do the same thing away from the restraining influences of a public trial in an open court room.

"The Constitution of the United States stands as a bar against the conviction of any individual in an American court by means of a coerced confession." and so forth.

I will say in regard to the last decision that this Court accepts it in no sense as a matter of logic but admits being bound by it.

I think the dissenting opinion of Mr. Justice Jackson points out what I believe to be the entire fallacy of the reasoning on which the majority decided the case, to wit, that the questioning of a defendant over a continued period of thirty-six hours without any physical torture or mistreatment in connection with it renders a confession inadmissible upon the ground that it is "inherently coercive."

So it is upon this background that the Court must consider the motion and the admissibility of the confession in this case.

■ It has been regarded as a rule that in an important case the Court will hear all the evidence with respect to the securing of a confession and then determine whether or not it may be admitted, as we are doing here. If it appears as a matter of law that it is admissible, then it will be admitted without further hearing. In arriving at this conclusion as to whether or not it is admissible as a matter of law, it must be determined whether or not reasonable minds might differ in connection with the circumstances as to whether it is voluntary or involuntary. The foregoing decisions of the high court, which we must assume has reasonable minds, differ so greatly that it could scarcely be said that a trial court might be safe in determining the question as a matter of law. The other alternative is that, if the Court should determine that it is admissible, but it involves a question of fact in determining the matter as to whether it is voluntary or involuntary, then it must be submitted to the jury with an instruction to the effect that it is part of their duty to determine as a question of fact whether the confession is voluntary or involuntary, and, if found to be involuntary, then it must be excluded from their consideration and they would have to find the determination of guilt or innocence upon the remaining evidence in the case, but, if it is found to be voluntary, then they might consider it with all the other evidence in the case in determining the guilt or innocence of the accused.

My review, or preview, of the situation, from a strictly law standpoint, up to the present time, leads me to lay down this as the fundamental principle for examining the situation as it has been disclosed here. I think that, of all of these cases, the Mitchell case comes nearer fitting the circumstances here than any other. We are not confronted here with any of the punishing circumstances, physical or mental, which

were carried on in the McNabb and the Ashcraft case. There is no evidence here that the defendant was abused or threatened, or anything of that kind. He admits that he was not treated in any illegal way, so far as his physical being was concerned. There is, of course, a dispute as to just what the circumstances were surrounding the matter of his making the confession, which perhaps makes it a preliminary question for the Court to determine.

But the Mitchell case is interesting for the reason that it contains both the elements which are being considered here—the admission of a confession and a motion to exclude certain evidence as having been unlawfully obtained, upon which the motion to suppress is based. It is on all fours with the proposition that is submitted here, because, of course, it was the contention there that it was barred by the decision in the McNabb case.

■ Now, the Ashcraft case is of no significance here, because this defendant admits he was not questioned over a long period of time or inordinately upon any occasion. Although he was questioned several times, there wasn't any continuous questioning, as he admits himself, so the Ashcraft case is of no particular significance here, except that it opens up a new field, as I believe, in this respect: Formerly, we had a large number of decisions which held that state officers were not representative of the Federal Government in overstepping the bounds of propriety in securing confessions or in making searches and seizures, but this Ashcraft case was a case in a State court and the state officers were making the investigation and were questioning the defendant and later secured the alleged confession, so that we are not safe in basing our ruling upon the proposition that, because these things were carried out by State officers and not by Federal Officers, the Federal government is not bound. It seems contrary to our original belief, that the same rule applies to state officers when they overstep the bounds of propriety as it does to Federal officers.

But it was on the proposition that these other things were done in the McNabb case, and things of an equivalent nature done in the Ashcraft case, that the contentions of the defendants were sustained, but in the Mitchell case the Court says that the mere fact that the officers did not obey the law in failing to take the prisoner im-mediately before a committing magistrate does not control the proposition of whether the confession is admissible or inadmissible. So that is eliminated. It may be admitted in this case, and the evidence clearly shows, that, while this man was arrested on the 22nd day of November, 1943, he was not taken before a committing magistrate until the 11th day of January, 1944, some two months afterward, so, if that were the controlling feature in the case, certainly, under the original ruling, or what we thought to be the original ruling, in the McNabb case, it would be, and should be, excluded. But that is no longer the law.

■ Now, the only thing remaining for the Court to determine is whether or not these circumstances show that this was a voluntary or involuntary statement made by the defendant, and I think that, under all of these circumstances, while they are disputed, certainly the Court would have to hold that, if tendered in court as a confession of the defendant, it must be admitted. As to the manner in which that arises, it will require an observation of the manner in which it comes up, as to whether or not it is to be admitted, with all the circumstances surrounding it, and the question of fact left to the jury as to whether or not it is voluntary or involuntary. I think that it is, as I have heretofore said, a matter of some hazard for a trial court to attempt to rule upon it as a matter of law and not present it as a question of fact to the jury, so I shall rule that the confession is admitted as evidence in the trial, with such surrounding circumstances as both the Government and the defendant wish to present to the jury concerning it. It may be that we will have to go over this entire ground again when we have the jury, but we cannot take too many chances either in sustaining the right of the Government to offer it or in protecting the rights of the defendant in the trial of a capital case.

■ As to the motion to suppress, it is based upon the matter of the officers, without the consent of the defendant, going to his room in a hotel in Denver and taking therefrom his suitcases or searching them. The officers in that case say that the defendant agreed and consented to that, and, while they knew where his room was, he told them where it was, and when one of them suggested that, since he had then signed the waiver of extradition, if he

wanted to take his grips with him it would save a trip back, he readily consented to go. I must, under the circumstances, accept the officers' view of that, for I think that not only the preponderance of the evidence, but the greater reliability of the evidence, seems to make it a question beyond a reasonable doubt that, in view of all of the circumstances surrounding his arrest in Denver, subsequently going to his room was with the consent of the defendant.

Of course, that excludes from consideration the theory that, the defendant being under arrest, his room could have been searched. I am not going so far as to say that his room could have been searched merely because he was under arrest, but, certainly, they had the right to go to his place when he said they could, and for that reason the motion to suppress the evidence will be overruled and denied.